# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# SOUTHEASTERN DIVISION

| | |
|---|---|
| JOHN A. LAMB, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 1:05 CV 27 LMB |
| ) | |
| STEVE LONG, et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

This matter is before the court on the Complaint of Plaintiff John A. Lamb on his civil rights action pursuant to 42 U.S.C. § 1983 against defendants Steve Long, et al. This case has been assigned to the undersigned United States Magistrate Judge pursuant to the Civil Justice Reform Act and is being heard by consent of the parties under 28 U.S.C. § 636 (c). Several motions are currently pending before the court. Plaintiff has filed a Motion for Summary Judgment. (Document Number 13). Defendants have filed a Response to plaintiff's Motion for Summary Judgment and a Cross-Motion for Summary Judgment. (Doc. No. 19). In addition, plaintiff has filed a motion for appointment of counsel. (Doc. No. 22). Finally, plaintiff has filed a "Motion for Order to Show Cause and Temporary Restraining Order and Injunction" (Doc. No. 24), to which defendants have filed a Response. (Doc. No. 26).

## Background

In his Complaint, filed pro se, plaintiff alleges that defendants conspired to write a false conduct violation for plaintiff for conspiring to rape, murder, cannibalize, and drink the blood of a female Southeast Correctional Center (SECC) employee. Plaintiff contends that he was in solitary

confinement at the time the conduct violation allegedly occurred. Plaintiff argues that he was denied due process because he did not receive a hearing regarding the conduct violation for six months, in violation of an institutional procedure. Plaintiff further alleges that defendants conspired together to cover up the violation of due process to keep plaintiff in administrative segregation for eleven months.

## Discussion

As previously stated, there are several motions pending before the court. The undersigned will first discuss the cross motions for summary judgment.

**I.       Plaintiff's Motion for Summary Judgment**

Plaintiff has moved for summary judgment on all of his claims. In their Response, defendants contend that plaintiff is unable to support his claims, and thus request that the court enter summary judgment in their favor.

**A.       Factual Background**

Viewed in the light most favorable to the plaintiff, the record reveals the following facts. In May of 2002, plaintiff was placed in administrative segregation upon the request of the Superintendent during the pendency of an institutional investigation regarding a conspiracy to harm staff. See Pl's Ex. 27. Plaintiff filed an Informal Resolution Request (IRR) on May 13, 2002, stating that he had been placed in administrative segregation for discriminatory reasons and requesting that he be released from administrative segregation. See Pl's Ex. 1. Prison staff responded to plaintiff's IRR on May 31, 2002, by stating that plaintiff had been placed in administrative segregation for reasons of safety and security of the institution, pursuant to the order of the Superintendent. See id. It was noted that plaintiff would be advised of the outcome

of the investigation.  See id.

Plaintiff filed a Grievance on June 15, 2002, in which he claimed that he was placed in administrative segregation for discriminatory reasons.  See Pl's Ex. 1.  The Superintendent denied plaintiff's Grievance on July 15, 2002.  See id.  The Superintendent stated that plaintiff was assigned to Administrative Segregation pending the results of an institutional investigation, pursuant to the guidelines of procedure, and not for any discriminatory reason.  Id.  It was noted that plaintiff would continue to receive reviews by the Administrative Segregation Committee in accordance with policy.  Id.

Plaintiff filed a Grievance Appeal on September 4, 2002.  See id.  Bryan Goeke, Assistant Director of the Division of Adult Institutions, responded to plaintiff's Grievance Appeal on February 3, 2003.  Id.  Mr. Goeke stated that he reviewed plaintiff's complaint and found no evidence that the staff's decision to assign plaintiff to segregation was based on racial profiling.  See id.  Mr. Goeke indicated that plaintiff was assigned to segregation due to an investigation of his involvement in unauthorized activities.  See id.  Mr. Goeke noted that plaintiff had since received several additional violations.  See id.  Plaintiff filed an additional Grievance and Grievance Appeal alleging the same claims, which the staff denied, finding that the issue had already been addressed.  See id.

On August 25, 2003, Correctional Officer David J. Penrod issued a Conduct Violation Report on plaintiff for conspiring to violate Rule #1 Murder/Manslaughter.  See Def's Ex. C.  Mr. Penrod found, after an extensive internal review, that plaintiff did conspire to rape, murder, disembowel, and cannibalize a female employee.  See id.  Mr. Penrod stated that this act was to be followed by the drinking of the employee's blood and murdering of other staff in that housing

unit, along with any other staff that attempted to respond. See id. Mr. Penrod indicated that plaintiff was the leader of a group calling themselves "United Kinsmen," which is of a White Supremacist/Aryan nature. See id. Mr. Penrod stated that numerous documentary evidence exists demonstrating that plaintiff created this group, authored a handbook for the group, and attempted to gain the assistance of other offenders to plan and commit the murder of employees of the Missouri Department of Corrections. See id.

On September 2, 2003, plaintiff filed an IRR, in which he contested the issuance of the conduct violation for violation of Rule #1. See Pl's Ex. 9. Prison staff noted that plaintiff's complaint could not be resolved, as plaintiff requested that the conduct violation be expunged from his record. See id. Plaintiff filed a Grievance on October 3, 2003. See id. On November 12, 2003, the Superintendent denied plaintiff's Grievance. See id. The Superintendent stated that an extensive internal review concluded that plaintiff did conspire to commit murder within a correctional center. See id. Plaintiff filed a Grievance Appeal on November 13, 2003. See id. On December 31, 2003, the Assistant Director of the Division of Adult Institutions modified plaintiff's violation to a Rule 9-Organized Disobedience. See id. It was noted that this modification was to be carried out only if plaintiff accepted it as final resolution of his complaint. See Def's Ex. F.

### B.    Standard of Review

A court may grant summary judgment when no issue of material fact exists and the moving party is entitled to judgment as a matter of law, according to Federal Rule of Civil Procedure 56 (c). A fact is material only when its resolution affects the outcome of the case. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202

(1986). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. See id. at 252, 106 S. Ct. at 2512. In deciding a motion for summary judgment, the court must review the facts and all reasonable inferences in a light most favorable to the nonmoving party. See Canada v. Union Elec. Co., 135 F.3d 1211, 1212 (8th Cir. 1997).

In a motion for summary judgment, the movant bears the initial burden of proving the absence of any genuine issue of material fact that would preclude judgment for the movant. See City of Mt. Pleasant, Iowa v. Associated Elec. Co-op, Inc., 838 F.2d 268, 273 (8th Cir. 1988). Once the movant has met this burden, the non-movant may not rely on mere denials or bare allegations, but must point to specific facts that raise a triable issue. See Anderson, 477 U.S. at 249, 106 S. Ct. at 2510-2511. The non-movant must set forth specific facts, by affidavit or otherwise, sufficient to raise a genuine issue of material fact for trial. See Celotex Corp. v. Citrate, 477 U.S. 317, 324, 106 S. Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The Supreme Court has found that "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the federal rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action." Id. at 327, 106 S.Ct. at 2555 (quoting Fed. R. Civ. P. 1).

**C. Plaintiff's Claims**

In support of his motion, plaintiff first argues that the conduct violation was false, as he was in solitary confinement on May 10, 2002, and was not in Housing Unit 5-B where the conduct violation occurred. Plaintiff also argues that he was denied due process because he did not receive a hearing on the conduct violation for six months, in violation of an institutional procedure. Finally, plaintiff contends that defendants conspired to cover up the due process

violation.

Plaintiff has brought the instant action pursuant to 42 U.S.C. § 1983, claiming violations of his rights under the Fourteenth Amendment of the United States Constitution. "To state a claim under section 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States . . ." West v. Atkins, 487 U.S. 42, 48, 108 S.Ct. 2250, 2255-56, 101 L.Ed.2d 40 (1988). Thus, to be entitled to relief under 42 U.S.C. § 1983, a plaintiff must show that: (1) a person (2) acting under color of state law (3) subjected the plaintiff or caused the plaintiff to be subjected (4) to the deprivation of a right secured by the Constitution or laws of the United States. See City of Oklahoma City v. Tuttle, 471 U.S. 808, 829, 105 S.Ct. 2427, 2439, 85 L.Ed.2d 791 (1985); Shrum ex rel. Kelly v. Kluck, 249 F.3d 773, 777 (8th Cir. 2001).

Plaintiff first argues that the conduct violation was false, as he was in solitary confinement on May 10, 2002, and was not in Housing Unit 5-B where the conduct violation occurred. Plaintiff made this same argument in the IRR he filed on September 2, 2003, challenging the imposition of the conduct violation. See Def's Ex. D. In an Inter-Office Memorandum written to Steve Buhs in response to plaintiff's IRR, Mr. Penrod acknowledged that plaintiff was not physically assigned to Housing Unit 5-B on May 10, 2002. See Def's Ex. E. Mr. Penrod explained that he chose that date because the confidential file was compiled and marked as evidence on that day. As such, plaintiff's argument that he could not have committed the violation because he was housed in solitary confinement on May 10, 2002, lacks merit. Rather, the evidence shows that an extensive internal investigation concluded that plaintiff conspired to rape, murder, disembowel, and cannibalize a female employee of the Missouri Department of

Corrections.

Plaintiff next argues that he was denied due process because he did not receive a hearing on the conduct violation for six months, in violation of an institutional procedure. To establish a Fourteenth Amendment due process violation, a plaintiff must first demonstrate that he was deprived of life, liberty or property by government action. Phillips v. Norris, 320 F.3d 844, 846 (2003); (citing Singleton v. Cecil, 155 F.3d 983, 987 (8th Cir. 1998)). The Supreme Court in Sandin v. Connor, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), laid out the test for determining liberty interests in a prison setting. Generally, state-created liberty interests are "limited to freedom from restraint which...imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. at 484, 115 S.Ct. 2300. In this context, there is no federal constitutional liberty interest in having state officers follow state law or prison officials follow prison regulations. Phillips, 320 F.3d at 847 (citing Kennedy v. Blankenship, 100 F.3d 640, 643 (8th Cir. 1996)). Rather, any liberty interest a prisoner has must be in the nature of his confinement, and not in the procedures used to determine his confinement. Id. Segregated confinement does not normally "present a dramatic departure from the basic conditions" of prison life. Sandin at 485, 115 S.Ct. 2301. Disciplinary action taken in response to a prisoner's misconduct "falls within the expected parameters of the sentence." Id.

Here, plaintiff's allegations that he was denied proper procedure as to the conduct violation he received do not challenge the conditions of his confinement as being atypical and significant in relation to the ordinary incidents of prison life. Rather, plaintiff argues that the state failed to follow its own procedural rules and thus failed to afford him due process. The Due Process Clause, however, does not federalize state-law procedural requirements. As such,

plaintiff's claim that he was denied due process because the state did not follow its own procedure fails.

When a prisoner is sanctioned as a result of a prison disciplinary proceeding, due process requires: (1) that written notice of the charges be provided to the inmate at least 24 hours in advance of the proceeding; (2) that the inmate be provided with a written statement by the factfinder discussing the evidence relied on and reasons for the disciplinary action; and (3) that the inmate be afforded the opportunity, so far as safety and security allow, to call witnesses and present documentary evidence. See Wolff v. McDonnell, 418 U.S. 539, 564-66, 94 S.Ct. 2963, 2979, 41 L.Ed.2d 935 (1974). The written statement need not be detailed; even a "sparse" statement will suffice if it is "sufficient to inform [the inmate] of the evidence relied upon by the factfinders in reaching their decision to take disciplinary action." See Brown v. Frey, 807 F.2d 1407, 1412 (8th Cir. 1986) (quoting Jensen v. Satran, 688 F.2d 76, 78 (8th Cir. 1982)).

Here, plaintiff does not argue that he received insufficient notice of the charges. With regard to the second requirement, the Conduct Violation Report includes a detailed summary of the evidence against plaintiff. The report states that United Kingdom documents authored by plaintiff were found, which detailed the group's plan to murder employees of the Missouri Department of Corrections. This evidence supports the violation for Organized Disobedience. See Def's Ex. C. Finally, the Conduct Violation Report indicates that plaintiff did not request any witnesses. See id. Thus, plaintiff received due process with regard to the conduct violation.

Plaintiff also contends that the defendants conspired to cover up the violations of due process and to keep him in administrative segregation. The undersigned has found that plaintiff's due process rights were not violated. There is no evidence supporting plaintiff's claim that the

plaintiff's claim that he was denied due process because the state did not follow its own procedure fails.

When a prisoner is sanctioned as a result of a prison disciplinary proceeding, due process requires: (1) that written notice of the charges be provided to the inmate at least 24 hours in advance of the proceeding; (2) that the inmate be provided with a written statement by the factfinder discussing the evidence relied on and reasons for the disciplinary action; and (3) that the inmate be afforded the opportunity, so far as safety and security allow, to call witnesses and present documentary evidence. See Wolff v. McDonnell, 418 U.S. 539, 564-66, 94 S.Ct. 2963, 2979, 41 L.Ed.2d 935 (1974). The written statement need not be detailed; even a "sparse" statement will suffice if it is "sufficient to inform [the inmate] of the evidence relied upon by the factfinders in reaching their decision to take disciplinary action." See Brown v. Frey, 807 F.2d 1407, 1412 (8th Cir. 1986) (quoting Jensen v. Satran, 688 F.2d 76, 78 (8th Cir. 1982)).

Here, plaintiff does not argue that he received insufficient notice of the charges. With regard to the second requirement, the Conduct Violation Report includes a detailed summary of the evidence against plaintiff. The report states that United Kingdom documents authored by plaintiff were found, which detailed the group's plan to murder employees of the Missouri Department of Corrections. This evidence supports the violation for Organized Disobedience. See Def's Ex. C. Finally, the Conduct Violation Report indicates that plaintiff did not request any witnesses. See id. Thus, plaintiff received due process with regard to the conduct violation.

Plaintiff also contends that the defendants conspired to cover up the violations of due process and to keep him in administrative segregation. The undersigned has found that plaintiff's due process rights were not violated. There is no evidence supporting plaintiff's claim that the

defendants conspired to deprive plaintiff of his constitutional rights. Due to the serious nature of the charges against plaintiff, it was reasonable to place plaintiff in administrative segregation pending the outcome of the institutional investigation. Further, as defendants point out, plaintiff incurred 18 additional conduct violations during the time he was confined to administrative segregation. See Def's Ex. H. As such, plaintiff's due process rights were not violated by his confinement in administrative segregation.

For the above reasons, the court finds that there is no dispute of material fact as to plaintiff's claims and that taking such facts in the light most favorable to plaintiff, no reasonable jury could find on behalf of plaintiff on his claims. Thus, as a matter of law, defendants are entitled to summary judgment, and plaintiff's claims should be dismissed.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's Motion for Summary Judgment (Doc. No. 13) be and it is **denied.**

**IT IS FURTHER ORDERED** that defendants' Cross-Motion for Summary Judgment (Doc. No. 19) be and it is **granted**. A separate Summary Judgment will be entered on this date.

**IT IS FURTHER ORDERED** that all other pending motions be **denied as moot.**

Dated this 11th day of September, 2006.

                                              LEWIS M. BLANTON
                                              UNITED STATES MAGISTRATE JUDGE